# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE G. WILLS, | 1: CV-F-98-6052 OWW DLB P |
| Plaintiff, | FINDINGS AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| C. TERHUNE, et al., | (Doc. 138, 185) |
| Defendants. | |

On October 29, 2004, plaintiff Dale Wills ("plaintiff"), a state prisoner proceeding pro se, filed a motion for a preliminary injunction. Defendants filed an opposition to the motion on May 6, 2005. In his motion, plaintiff seeks to enjoin California State Prison Corcoran ("CSPC") from using low wattage security lights in its Security Housing Unit ("SHU") on the basis that it allegedly disrupts plaintiff's sleeping habits. Plaintiff claims the lights constitute a form of cruel and unusual punishment in violation of th Eighth Amendment.

## **BACKGROUND**

Plaintiff asserts that he was sentenced to the SHU following an assault on another inmate. He was assigned to the SHU from March 1998 to December 1998 and again on April 29, 2004. He contends that in the SHU he is again forced to "live in a state of constant illumination and disallowed access to a functioning on-off light switch." Plaintiff describes the light fixture inside his cell as having four (4) light bulbs, three of which are simultaneously activated at approximately 5:45 a.m. each morning and remain activated until 9:30 p.m. each evening. He describes these as the "bright

lights. Plaintiff states that the other light bulb, the "night light," is on continuously, twenty four hours a day. Plaintiff does not know the wattage of the light bulbs. While there is a light switch in his cell, plaintiff states that it is inoperable. Plaintiff contends that these conditions cause him nausea, dizzy spells, chronic headaches, vision impairment and emotional distress. He also alleges that he is unable to maintain a consistent sleeping habit because his cell is constantly illuminated. He contends that while the night light is the only one constantly illuminated, it alone is too bright to sleep. He also states that the conditions prevent him from engaging in an exercise regime due to chronic exhaustion. Plaintiff further contends that the constant illumination increases the temperature of his cell which is already extremely hot in the summer time. In support of his motion, plaintiff submits numerous declarations from inmates who have been in the SHU at various conditions. These inmates confirm the conditions described by plaintiff.

Defendants oppose the preliminary injunction and argue that plaintiff has failed to meet his burden of showing that he is likely to succeed on the merits and further that greater hardship would result to defendants from granting the injunction than to plaintiff from denying.[1] Defendants submit evidence that the cells in the SHU have overhead fluorescent lights that consist of three (3) elongated, 40 watt bulbs that are approximately four (4) feet in length.[2] Document #168, Attachment 11, Declaration of Robert Sweeney, ¶ 4 and Attachment #9, Declaration of Captain Raul Lopez, ¶ 4. There is also a six (6) inch elongated 13 watt security bulb which is on 24 hours a day ("security light"). Id. Before 1996, inmates housed in the SHU had control over their daytime cell-lighting; however, the security lights remained on 24 hours a day without exception. Document 168, Attachment #9, Declaration of Captain Raul Lopez, ¶ 5. In 1996, due to constant vandalism by SHU inmates in tampering with the in-cell controls for various illicit reasons, the institution rewired the

---

[1] On May 23, 2005, plaintiff filed a motion to strike defendants' opposition (Document #185) on the grounds that defendants Galaza and Terhune do not have standing to oppose the motion for preliminary injunction in that pursuant to Federal Rule of Civil Procedure 25(d)(1) defendants Jeanne Woodford, the current Director of Corrections and Allen Scribner, the current Warden of CSP Corcoran were automatically substituted in their place. Plaintiff's motion is denied. To the extent defendant Woodford and Scribner were automatically substituted in because they are the successors to the public office, the opposition field on behalf of defendants Galaza and Terhune is deemed the opposition of defendants Woodford and Scribner.

[2] Defendants request that the Court take judicial notice of the evidence submitted in support of and the motion for summary judgment filed May 6, 2005. The Court grants defendants' request.

cell lights to disconnect the inmates' control over the lights. Id. Periodic security checks of the cells are necessary to ascertain the inmates' well-being and deter criminal or inappropriate activities. Id. At ¶¶ 6,7, and 8. While performing these security checks or when walking by the cells, officers often put themselves in harms way. Id. One way they are placed in harms way is from inmate "gassings." Id. The security lights provide a low wattage illumination within the cells allowing correctional officers to see inside them at any time and they operate as a deterrent for inappropriate behavior. Id. Defendants contend the security light, however, is not bright enough by itself to allow a person to read or write in the cell. Id.

## DISCUSSION

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). A preliminary injunction is available to a plaintiff who "demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor." Arcamuzi v. Continental Air Lines, Inc., 819 F. 2d 935, 937 (9th Cir. 1987). Under either approach the plaintiff "must demonstrate a significant threat of irreparable injury." Id. Also, an injunction should not issue if the plaintiff "shows no chance of success on the merits." Id. At a bare minimum, the plaintiff "must demonstrate a fair chance of success of the merits, or questions serious enough to require litigation." Id.

Here, plaintiff has not met his burden of demonstrating a fair chance of success on the merits. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of

1  serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

2  The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 835. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Farmer, 511 U.S. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d at 1128; see also Daniels v. Williams, 474 U.S. 327, 330-32 (1986).

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks and citations omitted). Requiring inmates to live in constant illumination, under certain circumstances, rise to the level of an Eighth Amendment violation. See Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996).

In this instance, plaintiff contends that the lighting in his cell constitutes cruel and unusual punishment in violation of the Eighth Amendment and he seeks an order enjoining CSPC from

4

requiring him to live under these conditions. Plaintiff has failed to establish that he is likely to succeed on the merits of his claim in that his proffered evidence does not satisfy the objective component of the Eighth Amendment. While plaintiff states that he is "unable to maintain a consistent sleeping habit" because his cell is "constantly illuminated," plaintiff admits that the security light is not even bright enough for him to read or write without straining his eyes. *See* Doc #168, Attachment #6, Deposition of Plaintiff, 21:1-9.

In Keenan v. Hall, 93 F.3d at 1090, cited by plaintiff, the Court held that constant illumination of a cell could qualify as an unconstitutional condition of confinement where it causes the inmate "grave sleeping problems." However, in Keenan plaintiff alleged that large florescent lights directly in front of and behind his cell shone into his cell 24 hours a day, so that his cell was "constantly illuminated, and [Keenan] had no way of telling night or day," and this condition caused him "grave sleeping problems" and other mental and psychological problems. Unlike the situation in Keenan, the security lights at issue in this case are similar to night lights and appear to provide only enough illumination for officers to conduct security checks on the inmates during the night. Plaintiff admits that the lights are not bright enough to read without straining.

Plaintiff offers no evidence that he was subject to the type of "grave sleeping problems" that occurred in the Keenan case. At his deposition, he testified that the lighting interfered with his sleep "a little bit" and he was "awakened a few times." *See* Document # 168, Attachment #6, Deposition of Plaintiff, 26:14-25, 28:7-13. Indeed, the first time plaintiff requested to see a physician after his transfer to the SHU was on August 10, 1998. While he complained of headaches, the records do not indicate any discussion regarding the SHU's lighting condition. Document #168, Attachment #12, Declaration of Alvin Gittisriboongul, ¶ 4. Further, on March 10, 1999, plaintiff told medical staff that he was having difficulty sleeping since his arrival due to anxiety over his legal issues. Id., ¶ 5.

In short, plaintiff has failed to establish that he is likely to succeed on the merits of his claim. While plaintiff has submitted the declarations of other inmates who support plaintiff's contention that the cells in the Corcoran SHU are constantly illuminated by the security lights; the declarations together with plaintiff's statements do not convince the Court that the conditions are such that plaintiff's constitutional rights have been violated. As the moving party, plaintiff bears the burden

5

1  of showing that he is likely to succeed on the merits of his claim. Plaintiff's evidence is insufficient
2  to meet this burden.

3  Plaintiff has also failed to establish that he will suffer irreparable harm should an injunction
4  not issue. While he states that the lighting conditions have caused him nausea, dizzy spells, chronic
5  headaches, vision impairments and emotional distress, he fails to submit any evidence in support of
6  these allegations. Indeed, there is no discussion in the medical records submitted by defendants
7  regarding the SHU's lighting conditions. Defendants however have submitted evidence establishing
8  that the security lights serve as a safety and security measure for staff and inmates and therefore
9  issuance of the injunction would compromise security of the institution. According to Captain
10 Lopez, the Facility Captain, inmates housed in the SHU are generally more violent, unruly, mentally
11 unstable and dangerous than those inmates in the general population. Document 168, Attachment
12 # 9, Declaration of Captain Raul Lopez, ¶ 7. The security lights allow officers to observe the
13 activities within the cell at a reasonable distance as not to put themselves in harms way. Id. Under
14 the circumstances of this case, the balance of hardships weigh in favor of denying the injunction.

15 In conclusion, "a preliminary injunction is an extraordinary and drastic remedy, one that
16 should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."
17 Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quotations and citations omitted) (emphasis in
18 original). A mandatory preliminary injunction such as that sought by plaintiff in the instant motion
19 "is subject to heightened scrutiny and should not be issued unless the facts and the law clearly favor
20 the moving party." Dahl v. Hem Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993). For the
21 reasons set forth, plaintiff has not met his burden as the moving party and the court recommends that
22 plaintiff's motion for a preliminary injunction be denied.

23 These Findings and Recommendations will be submitted to the United States District Judge
24 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30)**
25 **days** after being served with these Findings and Recommendations, the parties may file written
26 ///
27 ///
28 ///

objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

**Dated:   June 16, 2005**                         /s/ **Dennis L. Beck**
3b142a                              UNITED STATES MAGISTRATE JUDGE