UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DALE G. WILLS, | ) | 1: CV-F-98-6052 OWW DLB P |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION RE CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | ) | |
| C. TERHUNE, et al., | ) | (Docs. 168, 173, 180) |
| Defendants. | ) | |

I.  Cross Motions for Summary Judgment

    A.  Procedural History

Plaintiff Dale G. Wills ("plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's second amended complaint filed October 22, 2001, against defendants Terhune and Galaza for participating in a policy that caused plaintiff to be exposed to a state of constant illumination within Corcoran State Prison's Security Housing Unit ("Corcoran SHU").  On May 6, 2005, defendants filed a motion for summary judgment and on May 17, 2005, plaintiff filed a cross motion for summary judgment.[1]  On May 23, 2005, plaintiff filed a motion to strike the declarations in support of defendants' motion for

---

[1] On May 27, 2005, defendants filed an objection to plaintiff's motion for summary judgment as untimely. Defendants' objection is overruled.  Plaintiff was granted an extension of time through June 9, 2005 in which to file his motion for summary judgment.  *See* Document #187.

1

1 summary judgment.[2] Defendants filed an opposition to plaintiff's motion for summary judgment on June 23, 2005. On July 14, 2005, plaintiff filed a motion for deferred ruling on defendants' motion for summary judgment to which defendants filed an opposition on July 21, 2005. On September 27, 2005, the Court granted plaintiff's request for an extension of time to file a reply to defendants' opposition to his motion for a deferred ruling on the motion for summary judgment. Plaintiff was granted until October 31, 2005 to file his reply. Plaintiff has not filed a reply nor has he filed an opposition to defendants' motion for summary judgment.

On December 2, 2005, this Court issued an order requiring the parties to file further briefing regarding the security light at issue and its characteristics. Defendants filed a supplemental declaration on December 16, 2005 and plaintiff filed a supplemental declaration on December 27, 2005.

     B.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id</u>. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

---

[2]Plainitff's motion to strike defendants' declarations is DENIED. The declrations comply with 28 U.S.C. § 1746 in that they were executed within the United States. Further, Mr. Gittisriboongul is competent to testify that the Attorney General's office received the Declration of the Custodian of Records accompnaied by plaintiff's medical records. Finally, Ms. Ayers attests to the authenticity of plaintiff's medical records maintained by the Department of Corrections through November 15, 2002, at which time plaintiff was incarcerated at California State Priosn - Sacramento and therefore where is medical record was maintained.

Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655

(1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).   Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### C.   Plaintiff's Motion for Deferred Ruling

On July 14, 2005, plaintiff filed a motion for deferred ruling on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f). Rule 56(f) provides:

> (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Ninth Circuit has explained that in order to prevail on a Rule 56(f) motion, the party "must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." State of California v. Campbell, 138 F.2d 772, 779 (9th Cir. 1998). "In making a Rule 56(f) motion, a party opposing summary judgment 'must make clear what information is sought and how it would preclude summary judgment.'" Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998) (quoting Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987)). The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists. Volk v. D. A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987).

Plaintiff's request pursuant to Rule 56(f) for an extension of time to conduct discovery so as to oppose the motion for summary judgment is denied. In his motion, plaintiff requests additional time to conduct discovery regarding defendants' assertions that inmates assigned to the SHU had previously vandalized the in cell light controls and that "gassing" is a concern of SHU staff.

4

However, plaintiff has failed to explain how this information is essential to resist defendants' motion or how the information would preclude summary judgment. Plaintiff simply states the information is "necessary rebuttal evidence." The Court disagrees and fails to see how the proposed discovery would assist plaintiff in opposing the motion for summary judgement on the dispositive issue of whether the conditions to which plaintiff was subjected in the Corcoran SHU violated his rights under the Eighth Amendment. Plaintiff's declaration is insufficient to support a motion pursuant to Rule 56(f) and the motion is therefore denied.

        D.      Statement of Undisputed Facts[3]

1. Plaintiff is a 35 year old inmate who was sentenced to serve 17 years in state prison on July 26, 1996 for first degree burglary. Deposition of Plaintiff, 5:18-19; 10:15-23.
2. On or about March 27, 1998, plaintiff was transferred from High Desert State Prison to the Security Housing Unit (SHU) at Corcoran State Prison. Deposition of Plaintiff, 17:2-10.
3. Plaintiff was sent to Corcoran SHU to serve a 15-month term for committing battery on an inmate while at High Desert State Prison. Deposition of Plaintiff, 29:8-15.
4. Plaintiff remained at Corcoran SHU from March 27, 1998 until December 1998, when he was transferred to the Pelican Bay SHU. Deposition of Plaintiff, 18:17-19.
5. The cells at Corcoran SHU have overhead fluorescent lights that consist of three elongated, 40 watt bulbs that are approximately four feet in length and are kept on during the daytime. Deposition of Plaintiff, 19:22-25; Declaration of Robert Sweeney, ¶ 4; and Declaration of Captain Raul Lopez, ¶ 4.
6. Each cell is also equipped with a six-inch elongated 13-watt security bulb ("security light")

---

[3] Plaintiff neither admitted or denied the facts set forth by defendant as undisputed nor filed a separate statement of disputed facts. Local Rule 56-260(b). Therefore, the court was left to compile the summary of undisputed facts from defendant's statement of undisputed facts and plaintiff's verified complaint and the statement of facts contained in plaintiff's motion for summary judgment. Verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). Because plaintiff neither submitted his own statement of disputed facts nor addressed defendant's statement of undisputed facts, the court accepts defendant's version of the undisputed facts where plaintiff's verified complaint and oppositions are not contradictory. Plaintiff was provided with the requirements for opposing a motion for summary judgment by the court in an order filed on July 10, 2002. Therefore, the requirements of Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) have been satisfied.

|   |   |
|---|---|
| 1 | that remains on 24 hours a day. Deposition of Plaintiff, 20:3-4: Declaration of Robert |
| 2 | Sweeney, ¶; and Declaration of Captain Raul Lopez, ¶ 4. |

7. The security light is a fluorescent six-inch rod that has a frosted coating. Supplemental Declaration of Robert Sweeney, ¶ 5. There is a muted plastic cover on the light fixture. *Id*. The lumens per watt emanating from the security light is 61.538. *Id.* The security light is 4 to 5 feet from an inmate's face when they are sleeping. Supplemental Declaration of Dale Wills, ¶ 4.[4]

8. Before 1996, inmates housed in the SHU had control over their daytime cell-lighting. However, the security lights remained on 24 hours a day without exception. In 1996, due to constant vandalism by SHU inmates in tampering with the in-cell controls for various illicit reasons, the institution rewired the cell lights to disconnect the inmates' control over the lights. No changes were made to the security lights. Declaration of Captain Raul Lopez, ¶ 5 and Exhibit A attached thereto.

9. The security lights provide a low wattage illumination within the cells allowing correctional officers to see inside them at any time. Periodic security checks of the cells are necessary to ascertain the inmates' well being and deter criminal or inappropriate activities. While performing these security checks or when walking by the cells, officers often put themselves in harm's way. One way they are placed in harms way is from inmate "gassings." The lights are essential for the officers' safety and operate as a deterrent for inappropriate behavior. Declaration of Captain Raul Lopez, ¶¶ 6, 7 and 8.

10. The security light provides enough illumination to allow officers to observe activities within the cell and check on the inmates' disposition. The light, however, is not bright enough by itself to allow a person to read or write in the cell. Declaration of Captain Raul Lopez, ¶¶ 6 and 8.

11. Plaintiff admits that the security lighting is not bright enough to allow him to read or write

---

[4] Total lumens emitted from the security light 800 (13 watts X 61.538 lumens per watt). A 60-watt regular incandescent bulb yields about 855 lumens according to the Federal Trade Commission website at http://www.ftc.gov/bcp/conline/pubs/products/ffclight.htm.

|     |     |     |
| --- | --- | --- |
| 1   |     | without straining his eyes.  Deposition of Plaintiff, 21:1-9. |
| 2   | 12. | The security light interfered with plaintiff's personal sleep program.  In particular, plaintiff testified that he wanted to consistently maintain uninterrupted sleep from 9:30 p.m. until 5:30 a.m.  Deposition of Plaintiff 2626:14-25. |
| 5   | 13. | The security light interfered "a little bit" with plaintiff's sleep.  Deposition of plaintiff, 27:4-10. |
| 7   | 14. | Plaintiff was "awakened a few times by the irritation of the light, what [he] perceived to be the irritation of the light."  Deposition of Plaintiff, 27:13-19; 28:7-13. |
| 9   | 15. | On March 31, 1998, four days after arriving at Corcoran SHU, plaintiff filed a grievance asserting that the security light constituted cruel and unusual punishment in violation of the Eight and Fourteenth Amendments of the U.S. Constitution.  Plaintiff requested that he be given personal control over his cell light and that prison staff refrain from turning on the light unless plaintiff refuses to comply with their orders to turn on the light for legitimate reasons, such as meals or count times.  Declaration of Jennifer Jones, Litigation Coordinator, ¶ 4 and Exhibit A attached thereto. |
| 16  | 16. | Plaintiff's appeal was denied at all levels due to institutional safety and security concerns.  Plaintiff was informed in the Director's Level of Review that relinquishing staff control over the lights would unduly compromise the safety and security of the staff and the institutional operation.  Moreover, having to rewire the cells to relinquish control to the prisoners would also be unduly burdensome and costly to the institution.  Plaintiff disagreed with the institution's safety and security concerns, and insisted that he is entitled to maintain control over the lighting in his cell.  Deposition of Plaintiff, 35: Declaration of Jennifer Jones, Litigation Coordinator, ¶ 4 and Exhibit A attached thereto. |
| 24  | 17. | Plaintiff's medical records show that the first time he requested to see a physician after his transfer to Corcoran SHU was on August 10, 1998, five months after his arrival at Corcoran.  Plaintiff complained of headaches before going to bed and requested reading glasses.  Plaintiff was seen by a physician, prescribed Motrin and given an optometry referral.  There were no discussions regarding the SHU's lighting condition.  Declaration of Alvin |

1 | Gittisriboongul, ¶ 3, Exhibit B attached thereto.

2  18. Plaintiff was again seen by a physician on November 17, 1998. Plaintiff complained of headaches. Plaintiff indicated that he had reading glasses, but they were allegedly taken from him. The medical records do not indicate that there were any complaints regarding the SHU's lighting condition. Declaration of Alvin Gittisriboongul, ¶ 4, and Exhibit C attached thereto.

19. On March 10, 1999, plaintiff confided to the medical staff that since his arrival at Pelican Bay State Prison, he had only been able to sleep three hours a night due to anxiety over his legal issues. Declaration of Alvin Gittisriboongul, ¶ 5 and Exhibit D attached thereto.

20. According to the Mental Health Progress Notes of March 26, 1999, Plaintiff informed medical staff that he was fearful of being housed in the general population. Plaintiff was prescribed Hydroxyzine to help him sleep. Declaration of Alvin Gittisriboongul, ¶ 6 and Exhibit E attached thereto.

21. Plaintiff testified that sleeping pills helped him sleep straight though the night. Deposition of Plaintiff, 46: 19-25; 47:1-3.

22. On May 11, 1999, plaintiff told mental health staff that he was depressed and stressed over the fact that by the time he is released from prison, he will be too old to have children. Plaintiff admitted that he often ruminated about his predicament, which disrupted or interfered with his ability to sleep. Declaration of Alvin Gittisriboongul, ¶ 7 and Exhibit F attached thereto.

23. Plaintiff contends that defendants Galaza and Terhune should be held legally responsible by virtue of their positions, during the relevant periods in this action, as the Warden for Corcoran State Prison and the Director of the Department respectively. Plaintiff admits that the only communication he had with either individual was through his inmate grievance requesting that he be given control over his cell lights. Deposition of Plaintiff, 36:11-25, 37:5-20.

24. Since his arrival at the Corcoran SHU in 1999, inmate Herman Johnson has been confined in a number of different cells and in each of the cells, he was subjected to constant

1  illumination and disallowed access to a functioning on and off light switch. He alleges the
2  constant illumination caused him adverse side effects. Declaration of Herman Johnson in
3  support of plaintiff's motion for summary judgment.

4  25. Since his arrival at the Corcoran SHU, inmate William Slay has been forced to live in
5  constant illumination with no access to an on/off switch. He alleges the illumination has
6  caused him adverse side effects, including inconsistent sleeping. Declaration of William
7  Slay in support of plaintiff's motion for summary judgment.

8  26. Since his arrival at the Corcoran SHU, inmate Justin Woods has been forced to live in
9  constant illumination with no access to an on/off switch. He alleges the illumination has
10 caused him adverse side effects, including inconsistent sleeping. Declaration of Justin
11 Woods in support of plaintiff's motion for summary judgment.

12 27. Since his arrival at the Corcoran SHU, inmate Michael Newman has been forced to live in
13 constant illumination with no access to an on/off switch. He alleges the illumination has
14 caused him adverse side effects, including inconsistent sleeping. Declaration of Michael
15 Newman in support of plaintiff's motion for summary judgment.

16 28. Since his arrival at the Corcoran SHU in 2001, inmate Steven Brenneman has been forced
17 to live in constant illumination with no access to an on/off switch. He alleges the
18 illumination has caused him adverse side effects, including inconsistent sleeping.
19 Declaration of Steven Brenneman in support of plaintiff's motion for summary judgment.

20 D.  Discussion

21 In his complaint, plaintiff asserts that he was sentenced to the Corcoran SHU following an
22 assault on another inmate. He was assigned to the SHU from March 1998 to December 1998 and
23 again on April 29, 2004. He contends that in the SHU he is forced to "live in a state of constant
24 illumination and disallowed access to a functioning on-off light switch." Plaintiff describes the light
25 fixture inside his cell as having four (4) light bulbs, three of which are simultaneously activated at
26 approximately 5:45 a.m. each morning and remain activated until 9:30 p.m. each evening. He
27 describes these as the "bright lights." Plaintiff states that the other light bulb, the "night light," is
28 on continuously, twenty four hours a day. Plaintiff does not know the wattage of the light bulbs.

While there is a light switch in his cell, plaintiff states that it is inoperable. Plaintiff contends that these conditions cause him nausea, dizzy spells, chronic headaches, vision impairment and emotional distress. He also alleges that he is unable to maintain a consistent sleeping habit because his cell is constantly illuminated. He contends that while the night light is the only one constantly illuminated, it alone is too bright to sleep. He also states that the conditions prevent him from engaging in an exercise regime due to chronic exhaustion. Plaintiff further contends that the constant illumination increases the temperature of his cell which is already extremely hot in the summer time. Plaintiff submits numerous declarations from inmates who have been in the SHU at various conditions. These inmates confirm the conditions described by plaintiff.[5] Plaintiff alleges that defendants Terhune and Galaza are responsible for the policy of constant illumination.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials

---

[5] Defendants object to the declarations pursuant to Federal Rules of Evidence 402, 701 and 802. The Court does not deem it necessary to rule on the objections because considering the declarations does change the Court's recommendation.

may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks and citations omitted).

Requiring inmates to live in constant illumination, under certain circumstances, rise to the level of an Eighth Amendment violation. See Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996).

Defendants argue that the lighting plaintiff complains of does not constitute cruel and unusual punishment in violation of the Eighth Amendment in that the security lights at issue provide minimal illumination, much like a night light. *See* UDF 9, 10. Defendants argue the light is only bright enough to allow the offices to safely look into the cells without jeopardizing their safety and plaintiff admits that the lights are not bright enough to read by. *Id*. Defendants point out that inmates in the SHU are generally more violent, unruly, mentally unstable and dangerous and the low wattage security lights only provide enough light to allow officers to observe the activities within the cell at a reasonable distance as not to put themselves in harm's way. UDF 9. In response to the Court's order, defendants submitted additional evidence regarding the lighting, which plaintiff does not dispute. It is undisputed that the security light is a fluorescent, six inch rod that has frosted coating, there is a muted plastic cover over the light fixture and the lumens per watt emanating from the

11

security light is 61.538.  UDF 7.

The court finds that defendants have met their initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Plaintiff does not dispute defendants' description of the security light, but maintains that while in the SHU, he was forced to live in a "state of constant illumination" and was prohibited from activating and deactivating the security light and that these conditions constitute cruel and unusual punishment.  While plaintiff states that he was "unable to maintain a consistent sleeping habit" because his cell is "constantly illuminated," plaintiff admits that the security light is not even bright enough for him to read or write without straining his eyes.  UDF 11, 12.

In Keenan v. Hall, 83 F.3d at 1090, cited by plaintiff, the Court held that constant illumination of a cell could qualify as an unconstitutional condition of confinement where it causes the inmate "grave sleeping problems."  However, in Keenan plaintiff alleged that large florescent lights directly in front of and behind his cell shone into his cell 24 hours a day, so that his cell was "constantly illuminated, and [Keenan] had no way of telling night or day," and this condition caused him "grave sleeping problems" and other mental and psychological problems.  Unlike the situation in Keenan, the security lights at issue in this case are similar to night lights and provide only enough illumination for officers to conduct security checks on the inmates during the night.  Plaintiff admits that the lights are not bright enough to read without straining.

Plaintiff offers no evidence that he was subject to the type of "grave sleeping problems" that occurred in the Keenan case.  At his deposition, he testified that the lighting interfered with his sleep "a little bit" and he was "awakened a few times."  UDF 13, 14.  Indeed, the first time plaintiff

requested to see a physician after his transfer to the SHU was on August 10, 1998. While he complained of headaches, the records do not indicate any discussion regarding the SHU's lighting condition. UDF 17. Further, on March 10, 1999, plaintiff told medical staff that he was having difficulty sleeping since his arrival due to anxiety over his legal issues. UDF 19.

The conditions complained of by plaintiff, namely the constant illumination of the cells in the SHU by the security light at issue, do not violate the Eighth Amendment. While plaintiff was indeed subject to "constant illumination," the illumination was, based on the evidence, akin to a night light. While plaintiff has submitted the declarations of other inmates who support plaintiff's contention that the cells in the Corcoran SHU are constantly illuminated by the security lights; the declarations together with plaintiff's statements do not convince the Court that the conditions rise to the level of a constitutional violation. This is especially true given the reasons for the lights. The security lights are necessary within the SHU to allow officers to observe inmate activity in cells, to maintain security and safety. Accordingly, the court finds that defendants are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claims. Because of this finding, it is unnecessary to reach defendants' arguments that they are entitled to qualified immunity.

E.   Conclusion

Based on the foregoing, the court finds that defendants are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claims against them and HEREBY RECOMMENDS that defendant's motion for summary judgment, filed May 6, 2005, be GRANTED and plaintiff's motion for summary judgment filed May 17, 2005 be DENIED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written

///
///
///
///
///

1 objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

   IT IS SO ORDERED.

   **Dated:   February 10, 2006**                    **/s/ Dennis L. Beck**
   3b142a                                            UNITED STATES MAGISTRATE JUDGE